**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

**MARIA DELVALLE ,** on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

**CALISTA TOOLS, LLC,**

Defendant.

--------------------------------------------------------------x

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **MARIA DELVALLE** ("Plaintiff" or "Ms. DeValle"), individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against Defendant **CALISTA TOOLS, LLC** ("CALISTA TOOLS" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ **8-101 et seq.**, arising from Defendant's failure to ensure that its e-commerce website, www.calistatools.com, is accessible to blind and visually impaired individuals

## INTRODUCTION

1. Plaintiff, MARIA DELVALLE, is a resident of New York and is permanently disabled due to severe visual impairment and legal blindness. Ms. DelValle suffers from proliferative diabetic retinopathy associated with longstanding diabetes mellitus, which has caused significant and irreversible damage to her vision. Her treating ophthalmologist, Jonathan N. Kruh, M.D., confirms that Ms. DelValle has significantly decreased visual acuity, blurred vision, difficulty recognizing detail, and an impaired ability to perform activities requiring functional vision. Dr. Kruh measured Ms. DelValle's visual acuity at 20/400 in her right eye and 20/200 in her left eye and documented proliferative diabetic retinopathy complicated by traction retinal detachment. Dr. Kruh

further advised Ms. DelValle to continue utilizing low-vision aids and screen-reading software and referred her to vision-rehabilitation services for additional support. (See **Ex. A – Maria DelValle Medical Report**).

2. Because of her disability, Plaintiff relies upon screen-reading technology, including JAWS and NonVisual Desktop Access ("NVDA"), together with keyboard navigation, to independently browse and interact with websites. She uses this technology to obtain product information, compare merchandise and prices, evaluate product features and purchasing options, determine availability, and make online purchases. For screen-reading technology to function effectively, website content and functionality must be coded so that information ordinarily conveyed visually can be recognized and communicated through assistive technology. Among other things, images require meaningful text alternatives, interactive controls require programmatically determinable names or labels, links must convey their purpose, content must follow a meaningful structure, and essential functions must be operable by keyboard. When these features are absent or improperly implemented, Plaintiff cannot independently obtain the same information or use the same functionality made available to sighted consumers.

3. Defendant CALISTA TOOLS, LLC ("Calista" or "Defendant") owns, operates, maintains, and/or controls the commercial Website www.calistatools.com (the "Website"), through which Defendant advertises, markets, and sells hair-care products, hair-styling products, styling tools, and related merchandise to members of the public, including consumers residing in New York.

4. The Website is an integral component of Defendant's retail business and provides consumers with access to Defendant's merchandise, product descriptions and images, prices, product features and benefits, ingredients, directions for use, availability information, purchasing controls, shopping-cart functionality, customer-service information, policies, and other information and services associated with Defendant's retail operations.

5. Defendant controls the policies, practices, design, coding, content, maintenance, and operation of the Website and is responsible for ensuring that the Website and the goods, services, privileges, advantages, and accommodations offered through it are accessible to blind and visually impaired consumers.

6. Through the Website, sighted consumers can independently investigate Defendant's merchandise, obtain information material to purchasing decisions, compare products and available options, evaluate product features, benefits, intended uses, prices, and availability, select merchandise, and complete transactions. Because portions of the Website are not accessible to screen-reading technology and keyboard navigation, Plaintiff and other blind and visually impaired consumers are denied an equivalent opportunity to independently access and use these goods, services, privileges, advantages, and accommodations

7. These accessibility barriers interfere with Plaintiff's ability to independently identify, investigate, compare, and evaluate Defendant's products and to obtain information necessary to make informed purchasing decisions. As a result, Plaintiff cannot use the Website with the same degree of independence, privacy, and effectiveness afforded to sighted consumers.

8. Plaintiff is a proficient user of screen-reader technology, including JAWS and NVDA, rely upon keyboard navigation and accessible website functionality to browse, understand, and interact with digital content. Because Plaintiff cannot independently perceive information presented solely through visual means, she depends upon websites being designed, constructed, and maintained in a manner compatible with the assistive technology necessitated by her disability. Meaningful alternative text, properly identified interactive controls, descriptive links, accessible navigation, and information that can be recognized and communicated by screen-reading software are essential to Plaintiff's ability to independently access and utilize digital content.

9. As a blind and visually impaired consumer, Ms. DelValle relies upon screen-reading

software, including NonVisual Desktop Access ("NVDA"), and keyboard navigation to browse websites, obtain product information, compare merchandise and prices, determine product availability, evaluate purchasing and delivery options, and complete online purchases. Screen-reading software converts digital content into synthesized speech or refreshable Braille, enabling blind and visually impaired users to navigate websites independently. For this technology to function effectively, websites must be properly coded to provide meaningful alternative text for images, programmatically determinable labels for interactive controls, descriptive link text, logical heading structures, keyboard-accessible navigation, and properly implemented ARIA markup. When websites fail to incorporate these accessibility requirements, screen readers cannot reliably interpret or communicate website content, depriving blind and visually impaired consumers of independent access to the goods and services offered online.

10. Defendant CALISTA TOOLS, LLC ("Calista" or "Defendant") owns, operates, maintains, and/or controls the commercial Website www.calistatools.com (the "Website"), through which Defendant advertises, displays, markets, and sells hair-care products, hair-styling products, styling tools, and related merchandise to members of the public, including consumers residing in New York.

11. Defendant controls the policies, practices, design, coding, content, maintenance, and operation of the Website and is responsible for ensuring that the Website, and the goods, services, privileges, advantages, and accommodations offered through it, are accessible to blind and visually impaired consumers.

12. The Website is a significant component of Defendant's retail operations. It provides consumers with access to Defendant's hair-care and styling merchandise, product descriptions and images, prices, product features and benefits, ingredients, directions for use, availability information, purchasing controls, shopping-cart functionality, customer-service information,

policies, and other information and services associated with Defendant's retail business.

13. Defendant offers sighted consumers the ability to independently investigate its products, compare merchandise and available options, obtain product information material to purchasing decisions, evaluate the features, benefits, ingredients, intended uses, prices, and availability of its merchandise, select products, and complete transactions through the Website. Defendant has failed to provide Plaintiff and other blind and visually impaired consumers with an equivalent opportunity to independently access and use those same goods, services, privileges, advantages, and accommodations.

14. The removal of the barriers alleged herein is readily achievable and may be accomplished through established accessibility practices, including the provision of meaningful text alternatives, programmatically determinable labels, descriptive links, properly structured headings and forms, accessible names for interactive elements, and keyboard-operable functionality.

15. Defendant's failure to provide an accessible Website has denied Plaintiff full and equal access to Defendant's merchandise and retail services and has interfered with her ability to independently investigate and evaluate the specific hair-care and styling products in which she is interested, obtain information material to her purchasing decisions, compare available products and purchasing options, and determine whether to purchase Defendant's merchandise for herself and as gifts for others.

16. Plaintiff brings this civil action on behalf of herself and all others similarly situated to challenge Defendant's ongoing operation of an inaccessible Website in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-100 et seq. Plaintiff seeks declaratory and injunctive relief requiring Defendant to remediate its Website, adopt accessibility policies, and ensure ongoing accessibility

so that blind and visually impaired individuals may independently access the goods and services Defendant offers online.

**JURISDICTION & VENUE**

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

18. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

19. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

20. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward Bronx consumers through its highly interactive ecommerce website, www.calistatools.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents, including Bronx County and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves

of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

21. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

22. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## **THE PARTIES**

23. Plaintiff MARIA DELVALLE is, and at all relevant times was, a resident of New York State. Ms. DelValle is legally blind and visually impaired and is a member of the protected class of individuals with disabilities under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.,* and the protections afforded under New York State and New York City law. As confirmed by her treating ophthalmologist, Jonathan N. Kruh, M.D., Ms. DelValle suffers from proliferative diabetic retinopathy associated with longstanding diabetes mellitus, which has caused severe and irreversible impairment of her vision. Dr. Kruh documented significantly decreased visual acuity, blurred vision, difficulty recognizing detail, and an impaired ability to perform activities requiring functional vision. He measured Ms. DelValle's visual acuity at 20/400 in her right eye and 20/200 in her left eye and further advised her to continue utilizing low-vision aids and screen-reading software. (See Ex. A – Maria DelValle Medical Report.)

24. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies upon keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot independently perceive and interpret information presented solely through

visual means, Ms. DelValle depends upon businesses to design, construct, and maintain their websites in a manner compatible with screen-reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, descriptive link text, and accessible navigation are essential for Plaintiff to independently obtain information, investigate merchandise, make informed purchasing decisions, and access digital content.

25. Defendant CALISTA TOOLS, LLC ("CALISTA" or "Defendant") owns, operates, maintains, and/or controls the commercial Website www.calistatools.com (the "Website"), through which Defendant advertises, displays, markets, and sells apparel and related merchandise to members of the public, including consumers residing in New York.

26. Defendant controls the policies, practices, design, coding, content, maintenance, and operation of the Website and is responsible for ensuring that the Website, and the goods, services, privileges, advantages, and accommodations offered through it, are accessible to blind and visually impaired consumers.

27. The Website is a significant component of Defendant's retail operations. It provides consumers with access to Defendant's merchandise, product descriptions, images, prices, sizes, colors, availability information, purchasing controls, shopping-cart functionality, customer-service information, policies, and other information and services associated with Defendant's retail business.

28. Defendant offers sighted consumers the ability to independently investigate its products, compare merchandise and available options, obtain information material to purchasing decisions, investigate retail-store and delivery options, select merchandise, and complete transactions through the Website. Defendant has failed to provide Plaintiff and other blind and visually impaired consumers with an equivalent opportunity to independently access and use those same goods, services, privileges, advantages, and accommodations.

29. The removal of the barriers alleged herein is readily achievable and may be accomplished through established accessibility practices, including the provision of meaningful text alternatives, programmatically determinable labels, descriptive links, properly structured headings and forms, accessible names for interactive elements, and keyboard-operable functionality.

30. Defendant's failure to provide an accessible Website has denied Plaintiff full and equal access to Defendant's merchandise and retail services and has interfered with her ability to independently investigate and evaluate the specific products in which she is interested, obtain information material to her purchasing decisions, and determine whether to purchase Defendant's merchandise.

## NATURE OF ACTION

31. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

32. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike.

33. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access

the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

34. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

35. Plaintiff, MARIA DELVALLE is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYSHRL, NYCHRL, and NYCRL. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software translates the visual internet into an auditory equivalent, reading page content, announcing links, buttons, headings, labels, and other interface elements so the user can navigate through keyboard commands.

36. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

37. Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles and headings;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible PDF files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Empty buttons, empty links, and unlabeled interactive controls that prevent a screen reader user from independently navigating and completing a transaction.

**STATEMENT OF FACTS**

38. Plaintiff MARIA DELVALLE is a legally blind and visually impaired consumer residing in New York. She suffers from proliferative diabetic retinopathy associated with longstanding diabetes mellitus, which has caused significant and irreversible impairment of her vision. Her treating ophthalmologist, Jonathan N. Kruh, M.D., documented significantly decreased

visual acuity, blurred vision, difficulty recognizing detail, and an impaired ability to perform activities requiring functional vision. Dr. Kruh measured Plaintiff's visual acuity at 20/400 in her right eye and 20/200 in her left eye and documented proliferative diabetic retinopathy complicated by traction retinal detachment. Dr. Kruh further advised Plaintiff to continue utilizing low-vision aids and screen-reading software. (See Exhibit A.)

39. Plaintiff's visual impairment substantially limits her major life activity of seeing and materially affects her ability to independently perceive and obtain visually presented information. She therefore requires assistive technology to independently access digital content and obtain information that sighted consumers are able to perceive visually.

40. As a blind and visually impaired consumer, Plaintiff relies upon screen-reading software, including NonVisual Desktop Access ("NVDA"), and keyboard navigation to browse websites, obtain product descriptions, investigate merchandise, compare products and prices, determine product availability, and complete online purchases. Without a properly coded website that is compatible with her assistive technology, Plaintiff cannot independently access online shopping information and services on equal terms with sighted consumers.

41. Plaintiff developed a genuine interest in Defendant's hair-care and styling products after learning about Defendant and its merchandise from other visually impaired individuals she encountered through vision-related classes and programs, including programs she attends through Visions on 23rd Street and Lighthouse Guild. These individuals, who experience visual impairments similar to Plaintiff's, discussed Defendant and its products with Plaintiff, causing her to investigate Defendant's merchandise for herself rather than merely browse hair-care and styling products generally.

42. Plaintiff values her privacy and independence and takes pride in her personal appearance and sense of style. Notwithstanding the limitations imposed by her visual disability,

Plaintiff wants to independently make decisions concerning the products she uses to care for, maintain, and style her hair without having to depend upon a sighted person to investigate products or make those purchasing decisions for her.

43. In particular, Plaintiff became interested in Defendant's JOUSSE Cleanse & Condition Duo, Perfecter Pro Bestseller Duo, and JOUSSE Vitality Spray. Plaintiff wanted to investigate these particular products for her own personal use because she regularly seeks products that may help maintain the health, strength, elasticity, manageability, smoothness, shine, and overall appearance of her hair. Plaintiff was also interested in Defendant's merchandise as potential gifts for family and friends during the approaching holiday season.

44. Before purchasing Defendant's merchandise, Plaintiff wanted to obtain sufficient information to determine whether the products were appropriate for her needs and represented practical and worthwhile expenditures of her money. Plaintiff therefore wanted to investigate and compare the products' purposes, features, ingredients, benefits, intended uses, directions for use, prices, availability, and other characteristics relevant to her purchasing decisions.

45. With respect to the JOUSSE Cleanse & Condition Duo, Plaintiff wanted to determine whether the product would be suitable for cleansing and conditioning her hair and scalp and whether its ingredients and represented benefits were consistent with the strength, smoothness, manageability, shine, and healthy appearance she sought to maintain. She also wanted to understand how the products should be used and whether their features and benefits justified their cost.

46. Plaintiff was separately interested in JOUSSE Vitality Spray and wanted to determine whether the product would be suitable for her hair-care and styling routine, including its represented uses relating to heat protection, hydration, detangling, frizz, and shine. Because Plaintiff wanted to protect and maintain the appearance and condition of her hair while styling it, this information was material to her determination of whether the product was appropriate for her.

47. Plaintiff also wanted to investigate the Perfecter Pro Bestseller Duo and determine whether it would be useful for accomplishing the styling results she desired, including volume, smoothness, curls, waves, and shine. Because this product represented a considerably greater expenditure than the other products she was investigating, Plaintiff wanted to independently understand its features, intended uses, and benefits before deciding whether its cost was justified for her personal needs.

48. In addition to considering these products for herself, Plaintiff wanted to investigate Defendant's merchandise as potential gifts for family and friends during the approaching holiday season. Plaintiff therefore wanted to independently compare Defendant's available products and prices and determine whether particular products would constitute appropriate and affordable gifts for their intended recipients.

49. On September 20, 2026, Plaintiff visited Defendant's Website using NVDA and keyboard navigation with the genuine intent to investigate Defendant's Perfecter Pro Bestseller Duo and determine whether the product was suitable for her personal styling needs and worth its substantial purchase price. Plaintiff navigated through Defendant's product listings and activated the link identified to her by NVDA as "The Perfecter Pro Bestseller Duo," intending to review the product and obtain the information she considered necessary before making a purchase.

50. After Plaintiff reached the product page for the Perfecter Pro Bestseller Duo, NVDA announced certain page information and headings but failed to provide Plaintiff with accessible information concerning important visual and interactive elements necessary to fully investigate and purchase the product. Among other things, the principal product image was announced to Plaintiff merely as "graphic," without meaningful alternative text describing the product or communicating the visually presented details that a sighted consumer could obtain from the image. Consequently, Plaintiff could not independently determine from the image information concerning the physical

appearance, design, configuration, or other visually conveyed characteristics of the product.

51. Plaintiff also navigated to the control provided for adding the Perfecter Pro Bestseller Duo to Defendant's shopping cart. NVDA announced the control generically as "button" without providing Plaintiff with an accessible name sufficient to identify its purpose. When Plaintiff attempted to interact with the control and focus thereafter moved away from it, NVDA did not provide sufficiently clear information to allow her to confidently determine whether she had successfully selected the desired product or whether the product had actually been added to her shopping cart.

52. As Plaintiff continued navigating through the middle and lower portions of the product page, she encountered additional links and headings that NVDA announced generically as "link" or "heading," without sufficient descriptive context to identify their destination or subject. These deficiencies materially impaired Plaintiff's ability to use NVDA's link and heading navigation features to move efficiently among the product information she sought, including information concerning the product's description, features, price, use, and purchasing options.

53. Because of these barriers, Plaintiff could not confidently and independently investigate the Perfecter Pro Bestseller Duo, obtain and understand all of the material product information available to sighted consumers, determine the significance of visually presented product information, reliably operate the product-selection controls, or successfully confirm an Add to Cart transaction. Plaintiff therefore left the Website without completing the purchase she had gone there to investigate.

54. On September 21, 2026, Plaintiff returned to Defendant's Website using NVDA and keyboard navigation and specifically sought information concerning the JOUSSE Cleanse & Condition Duo. Plaintiff wanted to determine whether the product was suitable for her hair-care needs, including whether its ingredients, represented benefits, intended uses, and directions for use

made it an appropriate and worthwhile purchase.

55. During this return visit, Plaintiff again encountered accessibility deficiencies that prevented NVDA from reliably communicating Website content and functionality in a manner equivalent to that available visually to sighted consumers. As Plaintiff navigated among Defendant's product listings and product-related content, inadequately identified visual elements, links, and interactive functionality interfered with her ability to independently identify and understand the product information and controls she encountered.

56. Those barriers were particularly significant because Plaintiff wanted to independently obtain and evaluate information concerning the JOUSSE Cleanse & Condition Duo's cleansing and conditioning purposes, ingredients, represented benefits, directions for use, price, and availability. Where NVDA failed to provide meaningful identification or context for visually presented content and interactive elements, Plaintiff could not confidently determine whether she had obtained the information available to sighted consumers or independently navigate and operate the controls necessary to proceed toward a purchase.

57. Despite returning to the Website on a separate occasion and again attempting to use NVDA and keyboard navigation for a concrete shopping purpose, Plaintiff remained unable to independently investigate the JOUSSE Cleanse & Condition Duo with the degree of privacy, confidence, and access afforded to sighted customers.

58. On October 10, 2026, Plaintiff returned to Defendant's Website for a third time using NVDA and keyboard navigation. On this occasion, Plaintiff sought, among other merchandise, to investigate Defendant's JOUSSE Vitality Spray, both as a potential product for her own use and in connection with her continuing investigation of Defendant's merchandise for possible holiday purchases.

59. While navigating the Website with NVDA on October 10, 2026, Plaintiff again

encountered accessibility deficiencies affecting her ability to independently identify, understand, and interact with Website content and functionality. Plaintiff encountered visually presented information and Website elements for which NVDA did not provide sufficient labeling, identification, or context to permit her to confidently determine the nature of the information being presented or the function of the elements she encountered. These deficiencies interfered with Plaintiff's ability to move efficiently among relevant product content, obtain the information she sought concerning JOUSSE Vitality Spray, and independently proceed toward a purchase.

60. Plaintiff's experiences on September 20, September 21, and October 10, 2026, were not isolated or momentary difficulties. On three separate visits undertaken for concrete shopping purposes involving specific Defendant products, Plaintiff attempted to use NVDA and keyboard navigation to investigate merchandise she was genuinely considering purchasing, yet repeatedly encountered accessibility barriers that interfered with her ability to obtain material product information, understand and operate Website functionality, and independently proceed toward a transaction.

61. The barriers Plaintiff personally encountered are consistent with accessibility deficiencies documented through accessibility testing of Defendant's Website. Among other findings, the testing identified deficiencies involving accessible names for images and links and the structure and identification of interactive controls. These documented deficiencies provide technical corroboration for the types of functional problems Plaintiff experienced when NVDA failed to meaningfully identify visual content, links, and interactive functionality during her attempts to investigate and purchase Defendant's merchandise. Exhibit B.

62. Because Plaintiff could not visually compensate for the information and functionality that NVDA failed to communicate, these accessibility deficiencies had a direct functional consequence for her. Plaintiff could not simply look at an unidentified image, visually determine

the purpose of a generically announced control, inspect which product option appeared selected, or visually confirm whether an attempted action had succeeded. She was therefore deprived of information and functionality available to sighted consumers and was unable to independently complete the shopping activities she went to Defendant's Website to perform.

63. The barriers Plaintiff encountered were not merely technical irregularities divorced from her shopping experience. They interfered directly with the specific activities Plaintiff visited Defendant's Website to perform and prevented her from independently obtaining and evaluating information she considered material to determining whether Defendant's hair-care and styling products were appropriate for her personal needs, suitable as gifts, and worth their respective costs.

64. The accessibility barriers therefore denied Plaintiff the privacy, independence, and equal opportunity afforded to sighted consumers. Plaintiff was unable to independently investigate specific merchandise, obtain product information material to her purchasing decisions, compare available products and choices, reliably operate purchasing functionality, and proceed toward an online transaction without assistance from a sighted person.

65. Plaintiff remains genuinely interested in Defendant's merchandise, including the JOUSSE Cleanse & Condition Duo, Perfecter Pro Bestseller Duo, and JOUSSE Vitality Spray. Her interest is based upon the recommendations that initially caused her to investigate Defendant's merchandise, the particular products she thereafter identified, her personal interest in maintaining and styling her hair, and her desire to independently determine whether Defendant's products possess the features, benefits, suitability, and overall value she seeks before spending her money.

66. Plaintiff intends to return to Defendant's Website after the accessibility barriers are removed to obtain the information previously denied to her, determine whether the JOUSSE Cleanse & Condition Duo, Perfecter Pro Bestseller Duo, JOUSSE Vitality Spray, or comparable products remain available and suitable for her intended purposes, investigate suitable alternatives if

necessary, and purchase Defendant's merchandise if it meets her needs and budget. Plaintiff is presently deterred from returning because, based upon the barriers she encountered during her three prior visits, she reasonably expects that those barriers will again interfere with her ability to independently investigate and purchase Defendant's merchandise.

67. Unless Defendant remediates the Website and maintains its accessibility, Plaintiff will continue to be denied full and equal access to Defendant's online goods and services and will face the same threatened injury when she returns for the specific shopping purposes alleged herein. Plaintiff therefore seeks prospective injunctive relief requiring Defendant to remove the accessibility barriers and provide blind and visually impaired consumers with full and equal access to the goods and services offered through the Website.

## CLASS ACTION ALLEGATIONS

68. Plaintiff MARIA DELVALLE brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All blind and visually impaired individuals in the United States who use screen-reading software or other assistive technology and who have attempted to access www.calistatools.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied full and equal access to the goods, services, information, privileges, advantages, and accommodations offered through the Website.

69. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York, who have attempted to access and were denied equal access to the goods, services, and information offered thereon.

70. The members of the Class and Subclass are so numerous that joinder of all members

is impracticable. Defendant operates a nationwide ecommerce platform and markets its products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access www.calistatools.com and have been denied equal access due to the systemic accessibility barriers confirmed by SORT SITE audits, and by Plaintiff's declarations, which corroborates the automated audit results and confirms that Defendant's Website contains pervasive WCAG 2.1 Level A and AA violations — including missing alternative text, empty buttons, empty links, missing form labels, broken ARIA references, inaccessible focus indicators, and nonsemantic navigation elements — that uniformly impact blind users across multiple pages and multiple visits. These barriers are not isolated anomalies but reflect a site-wide pattern of non-compliance that affects all blind consumers who attempt to access Defendant's website, thereby rendering the Class and Subclass sufficiently numerous for certification.

71. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and

- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

72. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

73. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

74. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

75. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

## FIRST CAUSE OF ACTION

### (Violations of the ADA, 42 U.S.C. § 12182 *et seq.)*

76. Plaintiff, **MARIA DELVALLE**, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

1. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and

> equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

77. Defendant's Website, www.calistatools.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

78. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

79. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

80. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

81. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the

> entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

82. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.calistatools.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

83. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

84. Plaintiff, **MARIA DELVALLE ,** on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

85. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

86. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

87. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.calistatools.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

88. Plaintiff has visited the Website, www.calistatools.com on a number of occasions and has encountered barriers to her access that exist.

89. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

90. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities,

privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

91. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

92. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

93. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business

entities and government agencies to ensure websites are accessible.

94. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

95. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

96. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

97. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

98. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

99. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

## THIRD CAUSE OF ACTION
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

100. Plaintiff, **MARIA DELVALLE,** on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

101. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

102. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

103. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

104. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

105. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.calistatools.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

106. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

107. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

108. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court

of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

109. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

110. Plaintiff, **MARIA DELVALLE,** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

111. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

112. Defendant is subject to NYCHRL because it owns and operates the Website, www.calistatools.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

113. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

114. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating

based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

115. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

116. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

117. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

118. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

119. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines

under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

120. Plaintiff is also entitled to reasonable attorneys' fees and costs.

121. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

122. Plaintiff, **MARIA DELVALLE** , on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

123. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

124. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;

- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.calistatools.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing him counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York

November 16, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com